IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TRACEY R. PERRON,

    Plaintiff,                             CIV. NO. S-06-2429 MCE GGH

    vs.

SECRETARY, DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

    Defendant.                           SUMMARY ORDER
_____/

        Previously pending on this court's law and motion calendar for July 26, 2007, was plaintiff's motion to compel production of documents, and defendant's motion for protective order in regard to the same documents. Joseph Maloney appeared for plaintiff. Paul Padda represented defendant, and Reynolds Wilson appeared by telephone for defendant. Having reviewed the joint statement and heard oral argument, the court now issues the following order.

BACKGROUND

        Plaintiff is claiming a hostile work environment, gender discrimination, and retaliation, due to her treatment at the Sacramento office of the Department of Health and Human Services Office of Inspector General ("HHS OIG") by her supervisor, Jim Greer, who was having an affair with a coworker, Pam Kite. At this satellite office, Greer supervised three female subordinate agents, plaintiff, Kite, and Heather Sowa. Greer was supervised by agent-in-charge

1

Sarah Allen, out of the San Francisco regional office. Plaintiff claims that she became aware of the affair on September 7, 2005.[1] According to plaintiff, Greer and Kite allegedly spent a lot of time behind closed doors and away from the office. As a result, plaintiff had to do their work because she was the more senior agent. She was not compensated for this work which required her to neglect her own work. Other effects of this hostile work environment were not receiving an earned financial reward because Greer was trying to obtain it for Kite, not receiving a quality step increase because Greer was trying to obtain one for Kite, and not receiving a requested work assignment to New Orleans for post Hurricane Katrina work which would have resulted in substantial compensated overtime, so that Greer could take Kite instead. Greer allegedly told his superior that plaintiff had withdrawn her request for the assignment. Plaintiff claims she was required to stay in Sacramento and do Greer and Kite's work while they were in New Orleans, without receiving any compensated overtime. Greer left Sacramento for the Katrina assignment on September 9, 2005, and Kite left Sacramento for the assignment on September 19, 2005. Both Greer and Kite returned from New Orleans on November 4, 2005. After plaintiff tried to obtain other employment,[2] she claims Greer criticized her to a potential employer, so that he could get Kite the job instead, and keep his best worker for himself. He also allegedly criticized plaintiff to Allen in order to cover up his affair. Plaintiff claims she was constructively discharged on December 12, 2005 when she resigned. Counseling failed to resolve the matter, and plaintiff filed her administrative complaint on March 27, 2006.

At issue are requests for production of documents, numbered 1 through 25.

A theme which runs through a number of requests is plaintiff's alleged need to show that she became overworked because of the affair, i.e., Greer's paramour was not doing her

---

[1] This date and other dates are taken from the undisputed facts set forth in the parties' summary judgment papers.

[2] Plaintiff announced to Greer that she had accepted other employment in mid-October, 2005.

share of the work. The undersigned questions the probative nature of these requests. According to plaintiff, she has a right to be "less busy" during her designated work hours than she otherwise was.[3] The American workplace has always been characterized by over and under-achievers. The undersigned is not aware, however, of damages being awarded for being an over- achiever. The nature of this assertion from a damages standpoint is problematic, and hence so is discovery.

DISPOSITION

<u>Request number 1</u> - Unredacted version of Report of Investigation (ROI) on James D. Greer (Greer OIG/ROI).

  Defendant shall produce this version as requested subject to a stipulated protective order.

<u>Number 2</u> - Original ROI on Greer drafted by Matt Kochanski, including drafts and any removed pages.

  To the extent defendant has such information in its possession, defendant shall produce it. Plaintiff's counsel is permitted to contact Mr. Kochanski directly, pursuant to defendant's representation at hearing.

<u>Number 3</u> - All correspondence dealing with the decision to remove pages from Kochanski's original Greer ROI (including among Kochanski, Tony Campbell, Mike Little, Frank Nahlik, Susan Callahan and anyone else).

  Defendant shall turn over all documents responsive to this request. Because defendant failed to produce a privilege log prior to the hearing, the attorney-client privilege is waived. <u>Eureka Financial Corp. v. Hartford Acc. and Indemnity Co.</u>, 136 F.R.D. 179, 184 (E.D. Cal. 1991).

\\\\\

---

[3] Plaintiff cannot complain that she was forced to work compensated overtime since she alleges in other respects that she desired overtime compensation which she did not receive on account of favoritism towards Kite.

<u>Number 4</u>  - All ROIs regarding investigations of Pam Kite, including investigations of her relationship with Greer AND her abuse of overtime while on assignment in New Orleans.

  Defendant has waived any claim of privacy for failure to provide a privilege log. Furthermore, privacy concerns here are de minimus with respect to an alleged affair which is well known.  Therefore, defendant shall respond to this request, but only to the extent the ROIs relate to the incidents at issue in this case.

<u>Number 5</u> - All emails related to the Greer/Kite investigation.

  Defendant shall respond to this request.

<u>Number 6</u> - Complete personnel files for plaintiff, Greer, and Kite, including disciplinary files for Greer and Kite in 2005 or later.

  In light of other documents ordered produced, these documents contain insufficient relevance to require their production.  This request is denied.

<u>Number 9</u> - Print-outs of statistical and case related accomplishments from the ARS system during the period January 1, 2006 to December 31, 2006, credited to other agents but dealing with matters initiated by plaintiff and/or Kite.  Most likely Heather Sowa assumed these cases.

  Defendant is not required to produce these documents because the relevance is problematic in light of the heavy burden.  It is not at all clear that "initiation" of a case warrants more attention than the follow through.  Trial in this matter should not degenerate into side issues of who deserved more credit.

<u>Number 10</u> - Time and attendance reports documenting all hours worked for the year 2005 for plaintiff and Kite, including adjustment for time and attendance issues identified as result of Kite timecard investigation, so it will reflect hours claimed by Kite and hours actually determined to have been worked by Kite.

  Defendant shall respond to this request.

<u>Number 11</u> - All documents relating to payments made to Kite for time she was in New Orleans or preparing to go to New Orleans, including overtime pay, hazard pay, comp time earned or

used, per diem paid, equipment purchases and any other funds dispersed.

      Defendant shall respond with a declaration, including any representation that there was no hazard pay for the Hurricane Katrina detail, if appropriate. Per diem amounts paid do not need to be accounted for as there are no damages for this category of payments.

<u>Number 12</u> - copies of OI Locators for every month in 2005 for the San Francisco region.[4]

      This requested information is not relevant as damages for having to work harder are not compensable. Although apparently agents are paid compensation for hours worked over forty hours, production of these documents would not indicate how many extra hours plaintiff had to work over her standard forty hours. Plaintiff's motion is denied in this regard.

<u>Number 14</u> - All award letters prepared by Greer for 2005.

      Defendant represents that it already provided relevant reward nomination letters pertaining to Kite and plaintiff. Defendant is not required to respond further to this request.

<u>Number 15</u> - "Documentation relating to all awards given in 2005."

      Awards given by supervisors other than Greer to employees other than plaintiff or Kite, are not relevant. This request is overbroad. Information sought by plaintiff can be obtained instead by defendant's production in response to request number 14.

<u>Number 16</u> - Documents relating to awards paid to plaintiff and Kite from the beginning of their tenure at HHS/OIG until 2005.

      Plaintiff's motion to compel this request is denied.

<u>Number 17</u> - All annual and mid year evaluations for plaintiff and Kite.

      Defendant has apparently produced plaintiff's evaluations. It shall produce Kite's evaluations for the year 2005, subject to a stipulated protective order.

<u>Number 18</u> - Confidentiality agreement between HHS and Greer, including documents relating to Greer's move to the Kansas City office, information relating to his downgrade and reduction in

---

[4] Sacramento was a satellite office of the San Francisco office.

5

pay, monies paid for his move, and any information provided to his new supervisor, Gary Holst.

        Defendant shall respond to this request in full, subject to a stipulated protective order.

<u>Number 19</u> - All information regarding discussions about plaintiff returning to employment at HHS.

        This request is granted as limited to the time period from December, 2005 to March, 2006, and defendant's search is limited to a paper and electronic search of discussions involving Matt Kochanski, Tony Campbell, Mike Little, and Frank Nahlik.

<u>Number 22</u> - All documents regarding the decision to remove Sarah Allen from the investigation of Greer and documents relating to policy or practice followed in other cases for such matters. "This should include but not be limited to a listing of all other disciplinary matters investigated during the period 2001 - 2006 and identification, where available of who conducted the investigation and if their immediate supervisor was removed."

        Defendant shall produce all responsive documents in their possession after a good faith search.

<u>Number 23</u> - Documents relating to all complaints stemming from the Greer/Kite affair, including documents generated as a result of EEO contact or complaint filed by Sarah Allen.

        Plaintiff may contact Allen directly to obtain this information.  If the information is not forthcoming, plaintiff may bring a further motion.

<u>Number 24</u> - All training records regarding firearms training provided as well as the same documentation for defensive tactics.

        The parties stipulated on the record at hearing that both plaintiff and Kite received proper firearms training with satisfactory marks.

\\\\\
\\\\\
\\\\\

CONCLUSION

Accordingly, IT IS ORDERED that:

1. Plaintiff's motion to compel production of documents, filed June 18, 2007, is granted in part and denied in part.

2. Defendant's motion for protective order, filed June 18, 2007, is granted in part and denied in part.

3. All documents ordered produced by this order shall be produced pursuant to a stipulated protective order.

DATED: 10/2/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH:076:Perron2429.dsy.wpd