UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TRACEY R. PERRON,                     No. 2:06-cv-02429-MCE-GGH

      Plaintiff,

  v.                                  MEMORANDUM AND ORDER

SECRETARY, DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

      Defendant.

----oo0oo----

Through the present action, Plaintiff Tracey Perron ("Plaintiff") alleges she was sexually harassed and retaliated against while an employee of the Department of Health and Human Services ("DHHS") ("Defendant"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. and California's Fair Employment and Housing Act ("FEHA"), Government Code § 12940 et seq.

///

///

///

Defendant now moves to dismiss all claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56 on all of Plaintiff's claims. As set forth below, Defendant's motion is GRANTED in part and DENIED in part.[1]

## BACKGROUND

Plaintiff was an employee of Defendant DHHS for approximately fifteen years before accepting similar employment at the Defense Criminal Investigative Service ("DCIS") in December, 2005. James Greer was the Assistant Special Agent in charge of the DHHS Inspector General's Sacramento Office, where he worked together with four female agents, including Plaintiff. Sarah Allen, as the Special Agent in Charge of the San Francisco Regional Office, was Greer's supervisor, as well as Plaintiff's second-level supervisor.

On September 7, 2005, Plaintiff learned that Greer and one of the female agents in the Sacramento office, Pamela Kite, were allegedly having an affair. Plaintiff claims that she had a personal conversation with Greer the next day outside the workplace at a local park. According to Plaintiff, she told Greer that engaging in an affair was not the appropriate way to address his marital difficulties.

---

[1] Because oral argument would not be of material assistance, this matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

2

1 She also states she expressed the belief that Pamela Kite was not
2 a suitable partner for Greer.  Plaintiff nonetheless states she
3 told Greer that she would voice no further objection to his
4 affair as long as Kite found employment elsewhere and the two
5 were not situated in the same office with Plaintiff.

6      On September 9, 2005, Greer traveled to New Orleans to
7 assist with Hurricane Katrina relief as part of a DHHS response
8 team.  Greer chose agent Kite from the Sacramento office to
9 assist him in completing this assignment.  Kite thereafter
10 traveled to New Orleans to join the response team on
11 September 20, 2005.  Sarah Allen stated that she told Greer that
12 Plaintiff was a more suitable candidate than Kite for the
13 response team effort.  Greer remained adamant that Kite was a
14 better choice despite Plaintiff's more extensive experience.

15      Plaintiff thereafter began looking for a new job in the
16 middle of September 2005.  She alleges she was seeking
17 alternative employment at DCIS only to give herself choices in
18 the event that the DHHS office environment did not improve.  When
19 DCIS Supervisor Scott Mumper contacted Greer about Plaintiff's
20 prospective employment with DCIS, Mumper claims that Greer gave a
21 negative recommendation and instead suggested that his alleged
22 paramour, Kite, be considered for the position.  Mumper proceeded
23 to accuse Greer, in the course of a heated conversation, of being
24 disingenuous about his effort to secure Kite's relocation so that
25 their affair could continue unimpeded.
26 ///
27 ///
28 ///

3

Although Plaintiff claims her subsequent acceptance of the DCIS position in mid-October was still with the hope that the DHHS office atmosphere would in fact allow her to stay, that hope apparently failed to materialize.  On November 8, 2005, after Greer and Kite returned from New Orleans, Plaintiff complained to Greer in an email about the uncomfortable environment created by the affair and told him that the situation had to be addressed. Plaintiff alleges she also complained verbally to Greer later in November 2005.  According to Plaintiff, after Greer and Kite returned from New Orleans, they worked from home on the same days, took extended breaks together, were overheard giggling together in their offices.  She also claims that Kite dressed provocatively, and Kite received packages delivered to the DHHS office from Victoria's Secret, a well-known purveyor of sometimes revealing attire.

On December 7, 2005, Plaintiff reported the affair to a superior for the first time when she spoke with Sarah Allen. Allen contacted Plaintiff in Mid-October because she believed Plaintiff appeared to be upset. At that time, Plaintiff told Allen she thought Kite was not performing all of her job duties and that Plaintiff was not receiving the assistance she needed for her cases.

Plaintiff ultimately resigned on or about December 12, 2005 to commence employment with DCIS after her concerns about DHHS were allegedly left unaddressed.  She subsequently instituted the present lawsuit.

///

///

4

**STANDARD**

**A. Motion to Dismiss.** On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. <u>Id.</u> at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

///
///
///
///

5

1    Federal Rule of Civil Procedure 12(b) provides that when a
2 motion to dismiss for failure to state a claim pursuant to
3 12(b)(6) is made and "matters outside the pleading are presented
4 to and not excluded by the court, the motion shall be treated as
5 one for summary judgment and disposed of as provided in
6 Rule 56..."  Because both parties have submitted extensive
7 exhibits going beyond the four corners of the complaint, the
8 Court will analyze this motion under the standard for summary
9 judgment.
10   **B.   Summary Judgment.**  The Federal Rules of Civil Procedure
11 provide for summary judgment when "the pleadings, depositions,
12 answers to interrogatories, and admissions on file, together with
13 affidavits, if any, show that there is no genuine issue as to any
14 material fact and that the moving party is entitled to a judgment
15 as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
16 principal purposes of Rule 56 is to dispose of factually
17 unsupported claims or defenses. Celotex Corp. v. Catrett, 477
18 U.S. 317, 325 (1986).  Under summary judgment practice, the
19 moving party

> "always bears the initial responsibility of informing
> the district court of the basis for its motion, and
> identifying those portions of 'the pleadings,
> depositions, answers to interrogatories, and admissions
> on file together with the affidavits, if any,' which it
> believes demonstrate the absence of a genuine issue of
> material fact."

24 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting
25 Rule 56(c).
26 ///
27 ///
28 ///

1    If the moving party meets its initial responsibility, the
2 burden then shifts to the opposing party to establish that a
3 genuine issue as to any material fact actually does exist.
4 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
5 585-587 (1986); <u>First Nat'l Bank v. Cities Ser. Co.</u>, 391 U.S.
6 253, 288-289 (1968).
7    In attempting to establish the existence of this factual
8 dispute, the opposing party must tender evidence of specific
9 facts in the form of affidavits, and/or admissible discovery
10 material, in support of its contention that the dispute exists.
11 Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12 the fact in contention is material, i.e., a fact that might
13 affect the outcome of the suit under the governing law, and that
14 the dispute is genuine, i.e., the evidence is such that a
15 reasonable jury could return a verdict for the nonmoving party.
16 <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 251-52
17 (1986); <u>Owens v. Local No. 169, Assoc. of Western Pulp and Paper</u>
18 <u>Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way,
19 "before the evidence is left to the jury, there is a preliminary
20 question for the judge, not whether there is literally no
21 evidence, but whether there is any upon which a jury could
22 properly proceed to find a verdict for the party producing it,
23 upon whom the onus of proof is imposed."  <u>Anderson</u>, 477 U.S. at
24 251 (quoting <u>Improvement Co. v. Munson</u>, 14 Wall.442, 448, 20
25 L.Ed. 867 (1872)).
26 ///
27 ///
28 ///

7

As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

**ANALYSIS**

**I.   Sexual Harassment based on hostile environment**

Both Federal courts as well as California courts have adopted similar standards for discrimination claims, hostile work environment sexual harassment claims and retaliation claims under FEHA. See, e.g., Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 279 (2006); Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

Plaintiff claims she was subjected to a hostile work environment because of Greer's romantic relationship with Kite. To prevail on her claim of sexual harassment in that regard, Plaintiff must show that (1) she was subjected to verbal or physical conduct because of her gender; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive work environment. Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).

///

The analysis is both objective and subjective: "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).

In most instances, workplace affairs in and of themselves have not been found to a create a sexually harassing environment. See, e.g., Candelore v. Clark County Sanitation Dist., 975 F.2d 588, 590 (9th Cir. 1992). An exception to this general rule exists, however, if the workplace affair entails "widespread" sexual conduct to which other employees are exposed, such as flagrant boasting about the relationship and/or public displays of affection. Miller v. Dep't of Corrections, 36 Cal.4th 446, 471 (2005).

There is no evidence here that Plaintiff's supervisor, Greer, and his alleged sexual paramour, Kite engaged in any such public displays evidencing their purported affair akin to those confronted by the Miller court. Nor were there sexually offensive comments made to Plaintiff in relation to the affair. The only arguable evidence of conduct permeating the workplace relates to Plaintiff's claim that Greer wore provocative clothing, received packages from Victoria's Secret, and sometimes was heard giggling together with Greer. Such behavior, even if true, did not create an sexually hostile work environment akin to that recognized as actionable by Miller.

///
///

Accordingly, Plaintiff's claim of sexual harassment based upon a hostile work environment under Title VII and FEHA fails as a matter of law.

**II.  Gender Discrimination**

Discrimination on the basis of sex is prohibited under both Title VII and California's FEHA.  Title VII of the Civil Rights Act makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may show a violation of this statute by proving disparate treatment, disparate impact or the existence of a hostile work environment. Sischo-Nownejad v. Merced Comm. Coll. Dist., 934 F.2d 1104, 1109 (9th Cir. 1991).  Similarly, FEHA makes it an unlawful employment practice for an employer, "because of the.... sex... of any person,... to discriminate against the person in compensation or in terms, conditions, or privileges of employment."  Cal. Gov. Code § 12940(j)(1).

Under the so-called McDonnell-Douglas test for Title VII and FEHA discrimination claims, the Plaintiff can establish a prima facie of sex discrimination by 1) demonstrating performance in accordance with her employer's legitimate expectations; (2) showing that she suffered an adverse employment action, and (3) establishing the presence of circumstances indicative of a discriminatory motive.
///

1 McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973);
2 see also Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th
3 Cir. 1998).  The amount that must be produced in order to create
4 a prima facie case, however, is "very little."  Sischo-Nownejad,
5 934 F.2d at 1111.

6 　　　Once plaintiff establishes a prima facie case of
7 discrimination, the burden shifts back to the defendant to
8 articulate a legitimate nondiscriminatory reason for the adverse
9 employment action.  McDonnell Douglas, 411 U.S. at 802-803.
10 If defendant meets its burden in that regard, the burden shifts
11 back to plaintiff to establish that defendant's proffered reason
12 was a pretext for discrimination.  See St. Mary's Honor Ctr. v.
13 Hicks, 509 U.S. 502 (1993).

14 　　　In attempting to allege gender discrimination in this case,
15 Plaintiff relies on the so called "paramour" theory of
16 discrimination, in which a supervisor's relationship with a co-
17 worked coupled with favoritism is used to support a
18 discrimination claim.  There is an uneven split in the circuits
19 regarding the validity of this theory.  One District of Columbia
20 Court tacitly endorsed this theory, in dicta.  See King v. Palmer,
21 (D.C. Cir. 1985) (stating that "unlawful sexual discrimination
22 occurs whenever sex is for no legitimate reason a substantial
23 factor in the discrimination.")  Aside from this one decision,
24 however, "every other federal court which has considered the
25 propriety of the 'paramour' theory has rejected it as a Title VII
26 cause of action."  Alberto v. Bank of Am., 1995 U.S. Dist. LEXIS
27 13520 (N.D. Cal. 1995) (citing DeCinto v. Westchester County Med.
28 Ctr., 807 F.2d 304 (2d Cir. 1986));

11

1  Becerra v. Dalton, 94 F.3d 145, 149-50 (4th Cir. 1996); Ackel v.
2  Nat'l Communs., Inc., 339 F.3d 376, 382 (5th Cir. 2003); Schobert
3  v. Illinois Dept. of Transp., 304 F.3d 725, 733 (7th Cir. 2002)
4  (Title VII does not prevent employers from favoring employees
5  because of personal relationships); Taken v. Oklahoma Corp.
6  Comm'n, 125 F.3d 1366, 1370 (10th Cir. 1997); Womack v. Runyon,
7  147 F.3d 1298.  Each of these courts reasons that "[w]hen an
8  employer discriminates in favor of a paramour, such an action is
9  not sex-based discrimination, as the favoritism, while unfair,
10 disadvantages both sexes alike for reasons other than gender."
11 Ackel, 335 F.3d at 382 (citing Green v. Adm'rs of the Tulane
12 Educ. Fund, 284 F.3d 642, 656 n.6 (5th Cir. 2002)).

The analysis changes, however, where favoritism directed from a supervisor to his paramour is transformed from simple favoritism to the concrete bestowal of employment benefits denied other employees.  The implementing regulations to Title VII makes it clear that such conduct can constitute prohibited discrimination.  29 C.F.R. § 104.11(g) states in pertinent part as follows:

> "Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity."

///
///
///
///
///

12

1    In this case, Plaintiff has proffered evidence that Pamela
2 Kite may have received tangible employment opportunities by
3 virtue of her relationship with James Greer.  Specifically, there
4 is evidence that Greer gave Kite a lucrative temporary assignment
5 in New Orleans (that apparently involved substantial overtime)
6 because Greer wanted to travel away from the office together with
7 his paramour.  This favoritism may have impacted Plaintiff.  As
8 stated above, Greer's own supervisor opined that Plaintiff had
9 more experience and would have been a better choice for the
10 assignment than Kite.
11   In addition, Plaintiff contends she obtained no merit-based
12 monetary award for uncompensated overtime she had to perform in
13 Kite and Greer's absence because Greer wanted to ensure Kite
14 received awards by giving the Plaintiff an unjustifiably weak
15 recommendation.  Similarly, Plaintiff alleges she was denied a
16 Quality Step Increase promotion because Greer failed to make the
17 recommendation Plaintiff deserved in order to secure promotions
18 for Kite.
19   In Candelore, while the Ninth Circuit upheld the District
20 Court of Nevada's grant of summary judgment for a defendant in a
21 sexual discrimination case also involving an alleged paramour, it
22 predicated that result on the fact that because Candelore "failed
23 to identify employment benefits or opportunities that she was
24 entitled to but did not receive, she has not stated a prima facie
25 case of discrimination under Title VII."  Candelore, 975 F.2d at
26 590.  Here, on the other hand, Plaintiff has identified such
27 benefits and opportunities.
28 ///

1     Significantly, Candelore was relied upon and distinguished in Prowell v. State, 2003 U.S. Dist. LEXIS 25530 (D. Or. Aug. 11, 2003). In Prowell, the plaintiff alleged sexual discrimination based on a workplace romance. Id. at 3-5. Prowell applied for a superior position within the defendant organization, and alleged that the applicant hired, who was less qualified, was only hired because she was romantically involved with a member of the hiring committee. Id. at 3-5. The court denied a motion to dismiss the claim, finding the facts distinguishable from Candelore because the plaintiff properly identified the employment benefits she was entitled to but denied, as required by the Ninth Circuit.

    The facts of the present case are analogous to those in Prowell. As stated above, Plaintiff has alleged she was denied employment opportunities and promotions as a result of Greer's favorable treatment of Kite. Plaintiff also alleges she suffered from an adverse employment action when Greer told Scott Mumper that Plaintiff was not qualified for the position with DCIS and that Mumper should hire Kite instead. Mumper stated he believed Kite was not as qualified as Plaintiff and that Greer only recommended her in order to maintain his affair.

    Plaintiff has presented enough evidence that she was denied employment opportunities and promotions as a result of Greer and Kite's relationship in order to survive a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

///
///
///
///

14

**III. Retaliation**

Plaintiff claims the adverse employment actions were retaliatory in violation of Title VII as well as FEHA. In order to establish a claim of retaliation thereunder, the Plaintiff must demonstrate (1) that she engaged in a protected activity; (2) that her employer was aware of the activity; (3) that she suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. Raad v. Fairbanks North Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003); see also Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

Plaintiff alleges adverse employment actions taken against her by Greer were retaliatory. In order to proceed on this claim, she must first allege she engaged in a protected activity of which her employer was aware. Plaintiff asserts her complaints to Greer regarding the alleged affair were a protected activity for purposes of her retaliation claim. Plaintiff specifically refers to her conversation with Greer on September 7, 2005, and her subsequent complaints to Greer about the ongoing situation involving Ms. Kite.

An employee's conduct may constitute protected activity for purposes of a retaliation claim not only when the employee opposes conduct that ultimately is determined to be unlawful, but also when the employee opposes conduct that the employee reasonably and in good faith believes is unlawful, whether or not that belief is ultimately borne out. Yanowitz, 36 Cal. 4th 1028 (internal citations omitted).

15

1  Even if, as indicated above, Greer's conduct cannot support a
2  viable discrimination claim, that fact alone consequently does
3  not defeat Plaintiff's claim that she reasonably believed she was
4  opposing unlawful conduct.  As a result, the Court cannot rule
5  out that Plaintiff engaged in protected activity, especially
6  since it must resolve all inferences in that regard in
7  Plaintiff's favor on a motion for summary judgment.
8       With respect to whether she sustained an adverse employment
9  action, Plaintiff claims that Greer lied to her future employer
10 in retaliation for her complaints about his affair, and failed to
11 submit appropriate documentation in support of performance awards
12 and a Quality Step Increase in Plaintiff's salary.  These
13 allegations are sufficient to constitute an adverse employment
14 action for purposes of stating a viable retaliation claim.
15      The more difficult inquiry identified by Plaintiff concerns
16 whether the adverse employment actions are causally related to
17 her protected activity.  "The causal link between a protected
18 activity and the alleged retaliatory action 'can be inferred from
19 timing alone' when there is a close proximity between the two."
20 Id. (citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,
21 1065 (9th Cir. 2002)).  While the time line of these events is
22 not completely clear at this stage, it is apparent that all of
23 these events took place during an approximately four-month
24 period.  The Plaintiff has referred to several instances of
25 protected activity, and several instances of alleged retaliation
26 that occurred during this period.  The Court must view the facts
27 before it and draw all reasonable inferences in favor of the
28 non-moving party.

16

Applying that standard, the Court can find a reasonable inference of causal effect between Plaintiff's experiences of adverse employment and her protected activity.

The Plaintiff has sufficiently established a close proximity between the activities in order to survive a motion for summary judgment as to her retaliation claim.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion for Summary Judgment, as to the lawsuit in its entirety, is DENIED. Summary adjudication is however, GRANTED in favor of Defendant as to Plaintiff's claim of sexual harassment. Defendant's request for summary adjudication is otherwise DENIED as to Plaintiff's remaining claims for gender discrimination and retaliation.

IT IS SO ORDERED.

Dated: November 16, 2007

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE